Good morning. My name is Randall Spencer, and I represent the plaintiff and the appellant, Tribank Investments. I'm suffering from a bad cough arising from a horrible cold, so I apologize for any interruptions in that regard. There are three issues in this appeal. I will only be arguing the first issue, not because the other two aren't important, only because of time constraints, but I'd be pleased to answer any questions the court may have. The first issue is whether the district court abused its discretion in granting Orient's Rule 12b3 motion to dismiss for improper venue. We believe that the court abused its discretion in two specific and important respects. First of all, it incorporated by reference a document referred to as the consulting agreement, which was not entered into by Tribank. It was entered into by an affiliated or a sister corporation. The district court justified its action by stating that Tribank relied on this document extensively in the complaint, but that's not the case. That's not what happened. In fact, the consulting agreement was only referred to once in passing, very fleeting. Counsel, you don't dispute the authenticity of the document. No, we don't dispute that it was not raised in the district court. If you're not disputing the authenticity of the document, the document is referred to in the complaint. What's the problem with the district court relying on it other than arguments going to the merits? In other words, are you arguing that it's improper for the district court to look at the document because it wasn't authenticated or introduced in some other way formally, or are you arguing that it's improper because this was a linear document and not a Tribank document? Whether or not the document is what it purported to be wouldn't be relevant because Tribank didn't rely on it extensively, and that's the test for incorporation by reference. The authenticity wasn't challenged in the district court. I still see the harm in looking at the document. It seems to me your best arguments go to the merits of the question, whether it's relevant at all. Well, I mean, there's no harm looking at it, but along that line, it wouldn't be relevant because the test is whether Tribank relied on it extensively. The key word here, Your Honor, is extensively, and yet the test for incorporation by reference was set forth in U.S. v. Ritchie. Well, I mean, aside from the fact that there was only a single reference to it in the complaint, there are some other sort of weird things going on in the case, namely that the amount of the consulting fee and other things that your client claims that he is owed don't seem to have come out of the ether unless they come from the consulting agreement. Well, that goes to the second issue. That's another way in which the district court abused its discretion, because even assuming that the consulting agreement was properly incorporated, which we dispute, we have to refer to the test for deciding a Rule 12b3 motion when nothing more is submitted to the district court other than documents. That test was fashioned by this Court in Murphy v. Schneider International, and what the Court decided in that case is that when you have this type of a motion decided on nothing more than a cold, hard record consisting of documents, that the nonmoving party is entitled to the benefit of all reasonable inferences and all factual disputes need to be resolved in favor of the nonmoving party. Now, in this instance... Do you treat it like a summary judgment? You treat it like a summary judgment motion is what you're saying, right? Well, similarly, yes. Yes, Your Honor. In this instance, there were no declarations submitted by any parties. It was decided on four documents. Number one, the complaint. Number two, the confidentiality agreement. Number three, the reciprocal agreement. Number four, the consulting agreement. The last three documents were attached to a declaration by counsel, but nothing else. The district court abused its discretion in two specific respects. This, I believe, goes back to what, Your Honor, Judge Bybee, you were referring to. There is nothing inconsistent with the consulting agreement and the allegations of the complaint because it's perfectly reasonable that there was a new agreement entered into whereby Tribank would take over some or all the obligations of Linear and that the consulting agreement was superseded, replaced, or abandoned. Wait. Is this something that you've alleged, or is this something you're telling us now? We've stated that in the brief, Your Honor. Your Honor, I can point the court. I am perfectly willing to explain exactly where this was done in the brief. But if you took over the obligations of Linear, then why aren't you bound by the form selection clause? Well, again, there's nothing unreasonable. An inference would be that the consulting agreement was no longer in force. Okay? That's a perfectly logical argument. I thought that your argument, I thought, maybe I misunderstood something. I thought that your argument was that the consulting agreement had nothing to do with this case because that was an obligation entered into by Linear, and Linear and Tribank are two different corporations. That's correct. That's exactly what we are. But I thought you just told me that Tribank may have taken over the obligations of Linear, including the consulting agreement. That would be an inference, Your Honor, that that could have happened. In other words, the district court assumed that the consulting agreement was the same agreement alleged in the complaint. Okay. I'm trying to figure out what your position is. Is it your position that Tribank took over the obligations of Linear, including the consulting agreement? I'm saying our position is that that's an inference that could have been made. Why don't you just tell me, what's the position of your client? Well. Does Mr. Stewart believe that Tribank took over the obligations of Linear because it will answer a lot of questions in this case, including the 12B3 question, but it will also answer a lot of questions that seem very important to Mr. Stewart, which is was he supposed to get 15% on the consulting agreement? I can't answer for Mr. Stewart, Your Honor. I can't. I don't know what Mr. Stewart. I can't answer for Mr. Stewart. You don't know whether your client's position is that the consulting agreement is now part of Tribank's? No. No, we've always taken the position that it had nothing to do with this. It was entered into with a totally separate entity. That was the contention of Orient, that the consulting agreement was part of this transaction. That's why I'm so puzzled by your inability to tell us whether Tribank has assumed the obligations of Linear or not. Well. It's a double-edged sword for you. Your Honor, I. Because if you've assumed the obligation, if Tribank has assumed the obligations of Linear, then Mr. Stewart may be entitled to 15%. That's a good thing for your client. On the other hand, the forum selection clause is, in effect, that's a bad thing for your client. I mean, no, it didn't necessarily. Our position has always been it had nothing to do. The consulting agreement has nothing to do. Okay. So your position is that the consulting agreement is an obligation of Linear. It's not an obligation of Tribank. And, therefore, the forum selection clause is not enforceable against your client. That's correct. Okay. Then we don't have to worry about inferences about anything else because we can look at the face of the documents. Well, I think that they're the inferences would be relevant simply because the court incorporated by reference the document. Again, we say it's totally irrelevant, but it's using the forum selection clause in that document to decide the motion when our position has always been the document is totally irrelevant. So in that sense, it would be important that we've always contended that the consulting agreement has nothing to do with this transaction. They're two separate corporations. You mean on this record? At this point, it doesn't look relevant. That's correct. Yes. I mean, again, because I suppose there could be a record that said, look, which I believe your opponents argue, Mr. Stewart is the sole individual in both of those entities. Linear said we're wiping out the Tribank stuff. Mr. Stewart signed off on that for linear anyway. Correct? Said the Tribank stuff is over and that everything's going to be done through linear. So the linear agreement said. Now, I take it there's not been any alter ego stuff in this case yet, et cetera. So we don't know what's going to happen, I suppose, but why the linear agreement is irrelevant to any decision is little beyond me. Well, I mean, my point was it wasn't relevant because they're just totally separate entities. And, again, in paragraph 38, all is only mentioned in passing. If we send this back and the district judge, is the judge real? Yes. Says, okay, I understand what those guys are doing. And he says, all right, I'm going to hold a hearing. Now we're out of summary judgment territory. I'm going to hold a hearing on the issue of 12B3. That's what I'm going to do. I'm going to do 12B6. I'm going to do 12B3. And I'm going to let people bring in declarations. And I'm going to hold a trial, mini trial, to decide whether Tribank's rights really are incorporated. Whatever it had are now in the linear world. And then I'm going to make the forum non-convenient decision or the forum selection clause decision. How about that? Well, it's perfectly proper into the Murphy case. That's what the court discussed as one option. The court could have done that. It could have denied the motion without prejudice and say, come back and supplement your motion with discovery. It shows the third option. So it's not exactly ‑‑ it's a totally irrelevant situation. It's just that the judge pulled the trigger too fast, perhaps, or didn't have enough before him to pull the trigger at all. Correct? That's your argument? That would be correct. Yes, Your Honor. I do want to make one comment, though, where I think Your Honor made a statement that Mr. Stewart was the lone employee. I didn't say he was. Oh. I said, suppose there are declarations that so said that he's the only one to count three of these two. Oh, I'm sorry. Sure. No, I have no idea what his relationship is to either of them. Okay. What is it? I'm still ‑‑ I'm a little confused here. What is it you would like us to do? Reverse the judgment, remand it for further proceedings. Okay. Further proceedings, meaning that the district judge could still decide that the forum selection clause is effective and that this whole matter has to be litigated in Hong Kong? He could if he held an evidentiary hearing or permitted the parties to renew the motion. Your position is consistent with Judge Fernandez's suggestion that the district judge pulled the trigger too quickly here and that we don't really know whether the forum selection clause should be enforced or not enforced until there's further findings. That's correct. In fact, maybe a better way to describe the relevance would be its relevance isn't really known. The relevance isn't really determined yet. Did you want to save some time for rebuttal? Yes. I have nothing further at this time. Thank you. Thank you. Good morning. Robert Weber of DLA Piper for Orient Paper. And may it please the Court, I think, Judge Bidey, you picked up on this, the issue in this case is where is the contract? There's an allegation here that there is a contract that entitles Mr. Stewart and Mr. Stewart's entities to 15% of a public corporation, almost one-sixth. He claims that he's entitled to this because he introduced it to some people, to some other people who maybe gave some financing to Orient Paper. But when the rubber hits the road and his counsel is asked, well, where exactly is this contractual right? He doesn't know. Maybe it's in some documents. Maybe it's not in some documents. Maybe it's in, as you put it, the ether. Well, pleading in a case is not a game of hide and seek. Are we talking 12b-6 now or are we talking 12b-3? We're talking 12b-3, Your Honor. How can it be 12b-3 if there's no contract? If there's no contract, I'm not sure what you mean, Your Honor. Right. I think if you were doing the forum selection clause, there has to be a contract containing that clause, right? Absolutely. So if there is no contract, how do you get to the forum selection clause? Well, because there are contracts here. Well, either there are or there aren't. And that's the problem with this case is if you have a contract for the forum selection clause issue, then you have a contract for the payment of the money. So which is it, do you think? There is a contract. There are written contracts that are alleged in the complaint. So the consulting agreement, then, is a contract that is binding on TriBank? We would submit that it is, yes. Okay. And that means, then, that Mr. Stewart's claim that he's entitled to 15% is also established by that contract. Then you can fight about whether he did what he was supposed to do. But the 15% is no longer in dispute, is it? Because it's now a matter of contract. I mean, this is the double-edged sword. And I think that double-edged sword is double-edged for both of you. Well, the litigate is in Hong Kong, but we will have just held that TriBank gets the benefit of the consulting agreement. Well, there's always going to be an issue as to whether the contract was breached or not, whether Mr. Stewart performed. Sure. And you can go fight that someplace else. Absolutely. But we will have at least held, and whether somebody in Hong Kong wants to recognize it or not, that TriBank gets the benefit and the burdens of the consulting agreement entered into by Linear. Right. Well, what Orient Paper is saying is that TriBank is alleging it's entitled to 15% of Orient Paper's equity for performing certain services. The only place that appears is in the consulting agreement. And so if that is the contract that TriBank wishes to enforce, well, it can't cherry-pick which provisions of the contract it should be enforced. It's going to be subject to the Forum Selection Clause also. It doesn't say it is the contract they want to support. Excuse me, Your Honor? TriBank doesn't say that is the contract it wants to support. Well, TriBank is very vague about what it says is in the contract. That sounds 12b-6-y again, not 12b-3-ish. Well, I think you're saying the complaint is too vague. Well, I'm not saying the complaint is vague, Your Honor. It's TriBank that's trying to muddy the waters. And let me tell you specifically what the complaint doesn't say. You think the complaint passes 12b-6 just fine, correct? It passes 12b-6 in what way? I think it fails to state a claim. How do you pass 12b-6 in a complaint? You make sufficient allegations to state your claim, correct? You believe the complaint states a claim by TriBank for 15 percent, correct? Not correct, because we brought a 12b-3.  12b-3 has nothing to do with whether the complaint states a claim upon which relief could be granted. 12b-3 is a totally different animal. My question to you is what you just said a minute ago, whether you thought the complaint was perfectly clear. It spells out a claim. Am I wrong? Here's, I think, where we're having an inconsistency, Judge. Yes, we are. The claim, excuse me, the complaint alleges the existence of a contract. Yes. I don't believe that it alleges a breach of contract. So to the extent that Orient Paper has raised a 12b-6 defense on the motion to dismiss, and it did raise both, it raised both a 12b-6 and a 12b-3, on the 12b-6 defense, Orient's paper position is that the complaint fails to state a claim for breach, not that it fails to allege the existence of a contract. Now, the contract that's alleged in the complaint is that's where TriBank gets a little squirrely. On the one hand, the complaint alleges that there's this confidentiality agreement that was first entered into, and then in the next breath, the allegation is that the parties agreed to compensation at a subsequent time, at a later date. Okay? And, of course, the compensation element of the contract is what the plaintiff is seeking to enforce. So to evaluate, to discover where that compensation element is contained, we asked the court, we asked the district court, to look at the other documents. The reason for this is because the confidentiality agreement says that this later agreement for compensation would be agreed to in some writing, and that the confidentiality agreement could only exist in writing. So you look at the record before you. There is a later writing a couple days later. That is the reciprocal agreement. The 15% compensation term is not contained in there. That reciprocal agreement says it can only be modified in writing. Lo and behold, there is a later writing. That's the consulting agreement. That's where the 15% compensation term is contained. The consulting agreement expressly states that it is replacing the other agreement, the reciprocal agreement between Tribank and Orient Paper. Counsel, did the district court rule on your 12B6 argument? It did not. It did not. I see that I'm running out of time. If the court does not have any ---- You have quite a bit of time. You have almost eight minutes left. Oh, I'm sorry. I looked at the wrong thing. You won't get away from us that easily. So stay at the podium. I ---- Counsel, let me take another run at this. It looks to me that you've almost made a collateral estoppel argument against Tribank. You have said, look, you have proffered various claims on behalf of Mr. Stewart and Tribank against us. Those claims can only be tied to the consulting agreement. And if you wish to be bound by the consulting agreement, if you wish to state your claims on the basis of the consulting agreement, you are also bound by the forum selection clause in the consulting agreement. And that says that the exclusive jurisdiction for this is Hong Kong. And it looks like that's what Judge Riehl said. I'm looking. He looks at this. He says, you've got a forum selection clause. I can't find any other basis on which their claims can be based other than the consulting agreement. And you get the bad with the good. This has got to go to Hong Kong. Okay? I think that's correct. Okay. Now, if that's true, then aren't you also collaterally estopped from denying that Orient Paper is bound to Tribank on the basis of the consulting agreement? I mean, why you ‑‑ if they're bound by it for purposes of the forum selection clause, aren't you bound by the same consulting agreement to the 15 percent? And then you can go and argue about whether Mr. Stewart did what he promised he would do or didn't do what he promised. But that's a whole different ‑‑ that's a whole different problem. I don't disagree with you. I think some of the issues that you're getting at would require factual findings and would require us to get to what Judge Fernandez was implying was something more akin to summary judgment. What we were doing on our motion to dismiss, I think, was even more basic than the way that you put it, which is we were trying to put it to the plaintiffs, where is the contract? What is the contract that you're really suing on? And the reason that we set it up that way is, to use the double-edged sword analogy that you were using before, is depending on what the plaintiffs say the contract really is, there were different defenses available. For instance, obviously, if the plaintiffs in the court believed that the contract was encompassed by all three of these written agreements, including the consulting agreement, then the form selection clause would apply. On the other hand, if, as the plaintiffs argued in some length in the court below and also in the opening brief, that the only place where the agreement exists is in this confidentiality agreement, well, then we turn to 12b-6, and we say, well, aha, there's nothing in the three pages of this confidentiality agreement that says what the plaintiff is bound to do or what Orient is obligated to pay. And so that fails to state a claim for breach of contract, because there's no contractual term in this confidentiality agreement that obligates Orient Paper to pay 15 percent of its equity. I understand all that, but what I'm not understanding is your option one, that Tribank does have the rights and obligations under the linear agreement. If that's the decision, well, then the linear agreement wipes out Tribank's rights anyway. That's what it says. So I'm not quite following where we go with that. So then you get to Hong Kong or you do it here. You say, well, then Tribank's out because the linear agreement it's bound by says that its rights are gone. Do you agree? Well, that's what the agreement says. I understand that. I'm with you. I understand. So that really is your point, isn't it? You get rid of Tribank no matter what. Is that your position? Well, I don't think no matter what. I think certainly the intention – I would argue that the intention of Orient Paper, at least, as evidenced by the consulting agreement, which, again, nobody disputes that it's authentic. The intention there is that the earlier agreement between Tribank and Orient Paper is being superseded and replaced by the detailed consulting agreement between linear and Orient Paper. Of course, also, Mr. Stewart, who signed both documents, is the president of both linear and Tribank. And while I'm not making an alter ego argument here, one could say that certainly the knowledge of Mr. Stewart is imputed to both entities. And so certainly Tribank would know that linear and Tribank's president were signing an agreement which extinguished the rights of Tribank under the reciprocal agreement in favor of linear. You know, all that you said just now makes it sound even more like one should say to the district court, you know what, you better hold an evidentiary hearing. Not summary judgment necessarily. He could do a little trial. You better hold a hearing and figure out what's going on here before you say, whoops, you're going off to Hong Kong. It sounds more and more like that. I'm listening to you. Sure, sure. But I don't think it's necessary due to the sole reason that Tribank doesn't dispute the authenticity of the agreements. The agreements are referenced in its complaint. It relies upon terms that exist only in the consulting agreement. And it doesn't challenge the authenticity of those documents. So, again, what is it that the district court, what would Judge Reel look at? He would look at the documents. He'd say, well, is this what the parties agreed to? Everybody's going to say yes. He'd look at all the stuff you're telling me about Stewart this and Stewart that and their connection to this way and that way and they're being vague about what agreement they're talking about. Here's the evidence. That's what they would go in. But he would decide that on a record as opposed to a bunch of inferences from a couple of pieces of paper. Well, I think that's where you and I disagree, Justice Fernandez. I don't think that there's inferences. I think that the documents say what they say. Nobody disputes that they say what they say. And Mr. Stewart is the president of both entities. There's no dispute over that. I don't believe that this was a getting back. Now I have 10 seconds. This was an abuse of discretion case. That's a pretty high standard. I don't think that Judge Reel abused his discretion here in considering documents that were cited in the complaint in which nobody challenged the authenticity of. And I would ask you to affirm that decision. Thank you very much. Thank you, counsel. Rebuttal. I have nothing further to add, but I'd be pleased to answer any additional questions which the court may have. Well, just to clarify, are you challenging the reliance of the trial court on the contracts? Yes. As to the consulting agreement, yes, we are. Why was that? Because it wasn't referred to extensively under the standards set forth in U.S. v. Ritchie, which were recently reaffirmed. I think it's Davis v. the HSBC Bank of Nevada. There has to be extensive reference. And, in fact, there's an earlier case, Cotto v. Eisenberg, which just says the mere mention of a document is not enough by itself to incorporate the contents of the document. Were they attached? The contract? They were attached to Orient's motion, 12b3 motion. They were. But not they were not attached to the complaint. No, nothing they were not. Nothing was. Okay. All right. Thank you, counsel. Thank you very much. I've enjoyed this opportunity. We're pleased that we could furnish some enjoyment for you. Thank you. Thank you. The case is argued and submitted for decision by the court.
judges: Fernandez, Rawlinson, Bybee